## DAN WILLIAMS v. THE STATE.

### No. 2158. ·Decided December 18, 1899.

**1. Manslaughter—Homicide by Officer of One Rescuing Prisoner.**

On a trial of a deputy sheriff for murder, where it appeared that while he was taking a drunken party to jail whom he had arrested for disturbing the peace, the deceased came up and struck him with a stick or a brick, whereupon he told deceased if he struck him again he would shoot him; deceased did so, and the officer shot and killed him; Held, sufficient evidence to support a conviction for manslaughter.

**2. Speedy Trial.**

The fact that the killing occurred during the term of court at which the indictment was found, and that the case was also called for trial and tried at said term, would not authorize a reversal upon the bare statement that the prejudice against defendant was so great at the time that it was impossible for him to obtain a fair and impartial trial, where the record shows nothing tangible indicating the correctness of the contention.

**3. Charge of Court—Failure to Charge All the Law.**

An objection that the charge of the court failed to instruct upon all the law applicable to the facts proved, will be entitled to no consideration which does not point out wherein it is defective, and where the charge taken as a whole appears to be sufficient.

**4. Murder in Second Degree—Manslaughter—Charge of Court.**

On the trial of an officer for murder, where the court has instructed the jury fully as to murder in the second degree, manslaughter, self-defense predicated upon actual and reasonable apprehension of danger and serious bodily harm, a further charge is not misleading which in effect instructed them that if defendant was taking a prisoner to jail, and deceased, to prevent his doing so, struck him with a stick, whereupon defendant shot and killed him, they could determine whether he was guilty of murder in the second degree or manslaughter, although under the evidence the attack by deceased upon him might have been with a brick, with his fist, or by shoving defendant's head against an iron fence.

**5. Homicide by Officer—Justifiable When—Manslaughter—Charge.**

Under provisions of Penal Code, articles 662, 664, an officer's right of self-defense is limited to danger or apparent danger to his own life, and he is not authorized· to kill a party attempting to rescue a prisoner or one attempting an escape where his own life is not endangered, and where the weapon used in an assault upon him is not a deadly weapon. If the weapon was not a deadly weapon and the blows inflicted upon him would merely serve to arouse that degree of anger, rage, or sudden resentment which renders his mind incapable of cool reflection, a killing by him under such circumstances would be manslaughter, and it is not error in the court to so charge the jury in such case.

APPEAL from the District Court of Waller. Tried below before Hon. WELLS THOMPSON.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Charles Davis, on the 26th day of August, 1899, by shooting him with a pistol.

Defendant testified in his own behalf, and his testimony, which, as to the main facts, is corroborated by some of the other witnesses, is as follows: "On the evening of the killing I arrested Joe Wilson down town for cutting up and cursing on the streets and started with him to jail. We got as far as the courthouse, when Mr. Dick Cuny and some other parties asked me not to put him in jail. Told them that if·

he would go on home and behave himself, I would let him go. Mr. Cuny said he would go and get his horse and see that he left town; and Mr. Cuny went after his horse and was gone about an hour and came back without the horse. There was a wagon going along the road and he told me to put him on the wagon. I took him and helped him to lift him up and put him in the wagon and told them to take him on home. They went up the road a piece and deceased commenced cursing and hallooing and jumped out of the wagon and started back towards town. They told me to come and get him; that they could not do anything with him. He was using very bad language, and I caught him and started around to the jail with him. The deceased ran up to me and told me to let him go; that I had no business with him. I told him that I was an officer and it was my duty to arrest him. He said, 'I've heard of you, you damned black rascal, before, arresting negroes.' I pulled Wilson on and the deceased followed us up to the trough, where Joe and I fell. I had Joe down with my hand in his collar, and he was trying to choke me. Had my head pushed back when Charley Davis, the deceased, a man that I did not know and never saw before to know him, struck me aside of the head a severe blow with something hard in his hand and knocked my head against the iron fence. I said, 'Don't you hit me again; if you do, I'll shoot you.' About that time he struck me in the mouth and I pulled my pistol and raised up on one knee, and as he was coming to me again I shot him. He was still over me, and I reached up and pushed him back. He had a large stick in his hand, and he struck me with the stick on the side of the head; gave me a great deal of pain and the knot is still here on my head. [Witness exhibits same to the jury.] My mouth was badly cut and swollen from the lick received from deceased. I know that he struck me with something harder than his fist. Joe Wilson, the drunken darkey, is a cousin of mine. Deceased had a whipstock. I do not know if he hit me with it or not."

*Lipscomb & Styles* and *W. J. Poole*, for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at confinement in the penitentiary for a term of five years.

Appellant, a deputy sheriff, had arrested one Joe Wilson at Hempstead, in Waller County, for disturbing the peace, and, after arresting him, started to the jail with said Wilson, who was drunk; and in a struggle with the prisoner appellant threw him down, and had hold of him when deceased came up and struck appellant,—some of the evidence showing with a stick, and some with a brick,—and, in the course of the altercation with the deceased, appellant said that if deceased struck him again, he would shoot him. Deceased did so, and appel-

lant drew a pistol and killed him. This is a brief statement, as we understand it, of all the main features of the evidence.

The first ground of the motion for new trial is "that the verdict and judgment is contrary to the law and the evidence, and the judgment is not supported by the evidence." We can not say that either of these contentions is correct, but think the evidence is sufficient to support the verdict.

His second complaint is "that the indictment and the alleged offense are of a very recent date, it being during the term of this court, while many people were in the city and about the place of the homicide. There was a great deal of prejudice against defendant, and it was at that time impossible for him to secure a fair and impartial trial." A bare statement of this character would not authorize us to reverse this case. The record must show something tangible, indicating the correctness of the contention. The Constitution guarantees a defendant a fair, impartial, and speedy trial; and, if this trial is fair (and we see nothing to indicate the contrary), we have no ground for interfering with the verdict.

He contends in his third ground that the verdict of the jury is excessive. We can not say that it is, under the facts in this case.

The fourth ground assigned as error is that the court failed to charge all the law applicable to the facts proven. In this assignment appellant does not state wherein the charge is defective. Taken as a whole, we believe the charge is the law applicable to the facts of the case. At any rate there is not such error in the same as is calculated to prejudice the rights of appellant.

His fifth ground is: "The court erred to the prejudice of defendant in the following portion of his charge: 'If you believe from the evidence that defendant, as deputy sheriff, had arrested and had in his custody Joe Wilson, and was in the act of taking him to jail, and deceased came up and struck defendant a blow with a stick, and tried to prevent defendant from taking said Joe Wilson to jail, and that thereupon defendant shot and killed deceased, then it is for you to determine from all the facts and circumstances in evidence whether or not defendant had the right to resort to use of weapons to prevent a rescue of his prisoner, if you believe a rescue was being made, and whether the resort to such weapons was the use of more force than was reasonably necessary in his position, and whether or not, under the facts in evidence, defendant is guilty of murder in the second degree, or guilty of manslaughter, or not guilty, as you may find under these instructions,' "—appellant's contention being that the court did not charge all the law applicable to the facts, in this: that the charge restricts defendant's right of defense to a blow with a stick, when under the evidence the blow might have been with a brick, with the fist, or by shoving defendant's head against an iron fence. This charge must be taken in connection with the whole charge. We find upon an inspection of the same that the court instructed the jury upon murder in the second degree, manslaughter aroused from ade-

quate cause, and the perfect right of self-defense. The charges on these three phases of the law of homicide were entirely appropriate, and as full as appellant could ask. We do not think the jury could have been misled into believing that the court intended to limit appellant's defense to an assault upon appellant with a stick, since, as indicated above, in charging on the perfect right of self-defense the court tells the jury that appellant would have the right to act upon a reasonable apprehension of danger or serious bodily harm, and it is not necessary that there should be actual danger, provided he acted upon upon a reasonable apprehension of danger, as appeared to him from his standpoint at the time. Without quoting all of the court's charge, an inspection of the whole will clearly show that appellant has no ground for complaint in the particular portion of the charge above complained of.

His sixth exception is to the following portion of the court's charge: "But if the jury believe from the evidence that defendant was a deputy sheriff, and while engaged in the lawful discharge of his duties had arrested one Joe Wilson for a violation of the law, and the said Joe Wilson was resisting said arrest, and that thereupon deceased came up in a hostile manner and made an assault upon defendant, and struck him several blows on the head with a stick, not a deadly weapon, and defendant became excited and aroused by passion to such an extent that he was incapable of cool reflection, and under such state of mind he shot and killed deceased, he would be guilty of manslaughter." Appellant's objection being that said charge was a direct charge upon the weight of the evidence, and limits entirely the right of defendant to defend himself, or his right to use necessary force to resist an attempt to wrest the prisoner from his possession, and plainly told the jury to find defendant guilty at all hazards, if they believed he shot deceased after deceased had struck him several blows with the stick, and from such blows defendant was caused to be aroused and incapable of cool reflection; and, further, that said charge is upon a statement that the evidence does not warrant, in that there was no evidence that defendant was struck several times on the head with a stick, or that he was struck at all with a stick. The record before us shows that defendant was struck with a stick. As stated above, appellant had arrested Joe Wilson for a misdemeanor. Appellant's ground of objection seems to be based upon a misapprehension of the statute. Article 662, Penal Code, provides, "Homicide by an officer in the execution of the lawful orders of magistrates and courts is justifiable when he is violently resisted and has just ground to fear danger to his own life in executing the order." Article 663: "The officer is justifiable, though there may have been an error of judgment on the part of the magistrate or court, if the order emanated from a proper authority." Article 664: "The rule set forth in the two preceding articles is subject to the following restrictions: * * * 8. The officer or other person executing an order of arrest is required to use such force as may be necessary to prevent an escape

when it is attempted, but he shall not in any case kill one who attempts to escape unless in making or attempting such escape the life of the officer is endangered, or he is threatened with great bodily injury. 9. In overcoming a resistance to the execution of an order the officer or person executing the same may oppose such force as is necessary to overcome the resistance, but he shall not take the life of the person resisting unless he has just ground to fear that his own life will be taken, or that he will suffer great bodily injury in the execution of the order." It will be seen from the foregoing articles that appellant's right of self-defense from danger or apparent danger alone is recognized; in other words, the statute does not authorize him to kill a party who is attempting the rescue of a prisoner, or to kill a person when he is attempting to escape. Hence, if appellant was assaulted by deceased, and the assault was not with a deadly weapon, then he would not be authorized or justified in slaying deceased, but the assault would merely serve to arouse in defendant that degree of anger, rage, or resentment which renders his mind incapable of cool reflection, and he would be guilty of manslaughter. Therefore, as stated above, the charge, as a whole, in our opinion, is not subject to the criticism urged by appellant.

Appellant's seventh ground is that one of the jurors had formed and expressed a hostile opinion against appellant in the case prior to being taken as a juror; and his eighth ground is because the juror S. M. May had formed a hostile opinion against defendant, stating the language of the juror, and attaching affidavits. The counter affidavits deny in toto the contentions of appellant. The trial court has passed upon these matters, and, in the light of this record, we can not say that he has committed an error. No error appearing in the record, the judgment is in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.